1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                  **FOR THE DISTRICT OF ARIZONA**

8

9    Dana Anspach a single woman; and Sensible        No. CV-13-01877-PHX-DGC
     Money, LLC, an Arizona limited liability
10   corporation,                                      **ORDER**

11                            Plaintiff,

12   v.

13   William Meyer, et al.,

14                            Defendants.

15          Defendants Laner and Hazelton & Laner have filed a motion to dismiss for lack of

16   personal jurisdiction.  Doc. 16.  Defendants William Meyer and Retiree, Inc. have filed a

17   motion to dismiss under Rule 12(b)(6) or Rule 12(b)(3).  In the alternative, Defendants

18   move to transfer the case to a district court in Kansas, or, in the alternative, to stay these

19   proceedings.  Doc. 20.  The motions have been fully briefed.  Docs. 26, 29, 30, 31, 34.

20   For the following reasons, the Court will grant a portion of the Rule 12(b)(6) motion and

21   deny the remaining motions.[1]

22   **I.      Background.**

23          Plaintiff Anspach, an Arizona resident, is a financial planner who offers clients her

24   expertise in financial investments and planning, including the area of retirement planning.

25   Doc. 1, ¶ 22.  Since 2008, Anspach has had a business relationship with About.com, an

26

27   _____

28        [1] The request for oral argument is denied because the issues have been fully
     briefed and oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b);
     *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1    internet-based information and advice source previously owned by the New York Times.

2    *Id*., ¶ 24.  Anspach acts as a "Guide" for About.com's *Money Over 55* website, and writes

3    eight new articles a month, attracting a readership of 200,000 people per month.  *Id*.,

4    ¶ 26.

5        Defendant William Meyer, a Kansas resident, is one of two shareholders of

6    Retiree, Inc.  *Id*., ¶¶ 4-8.  Meyer asserts that, through Retiree, Inc., he has developed a

7    unique business model for increasing the amount and longevity of retirees' retirement

8    assets.  Doc. 16 at 2.  In 2011, Meyer contacted Anspach about the possibility of working

9    together in the area of financial planning.  Doc. 1, ¶¶ 35-36.  In preparation for these

10   talks, in April 2011, Meyer asked Anspach to sign a confidentiality agreement with

11   Retiree, Inc., in order to protect the proprietary nature of his business model, which she

12   did.  *Id*. at 37; Doc. 20 at 3.  Around the same time, Anspach and Meyer also began a

13   romantic relationship.  Doc. 1 at 37.  The business and personal relationships between

14   Anspach and Meyer ended after about six months.

15       In 2011, after her relationship with Meyer ended, Anspach founded Sensible

16   Money, LLC, for which she is the sole member and manager.  *Id*., ¶ 3.  According to

17   allegations by Meyer, Anspach used Sensible Money, LLC, to impermissibly take credit

18   for and use Meyer's business model.  Doc. 20 at 3.  When Meyer learned of Anspach's

19   actions through Sensible Money, LLC, he asked attorney Joel Laner of Hazelton & Laner

20   LLP to protect Retiree, Inc.'s interests.  Laner thereafter filed a grievance against

21   Anspach with the Certified Financial Planner Board of Standards ("CFP Board") in

22   January 2012.  Doc. 1, ¶ 43.  The grievance alleged that Anspach had violated the

23   confidentiality agreement with Retiree, Inc., violating the CFP Board's rules of conduct.

24   Doc. 1-2.

25       Also in January 2012, Laner sent a letter to About.com, courtesy of the New York

26   Times Company, informing them that Anspach "has recently breached our contract" and

27   that Retiree, Inc. would "move forward to include the The New York Times in the

28   lawsuit" [*sic*], and demanding that Anspach be removed as the *Money Over 55* "Guru"

1    and the pages she had written for the website be taken down, among other things.

2    Doc. 1-3.  Laner sent another letter to About.com on January 18, 2012, attaching the

3    confidentiality agreement, describing Anspach as having promulgated "a clone" of

4    Retiree, Inc.'s unique business model, and asserting that Anspach had violated

5    About.com's Ethics and Disclosure Policies, among other things.  Doc. 1-4.

6            On February 7, 2012, Retiree, Inc. filed a complaint in the United States District

7    Court for the District of Kansas for breach of contract and preliminary and permanent

8    injunctive relief against Anspach and Sensible Money, LLC.  *Id.*  The forum was chosen

9    pursuant to a forum selection clause in the confidentiality agreement that identified

10   Kansas federal court as the proper forum for all disputes arising out of breach of the

11   agreement.  Doc. 20 at 13.  In July 2013, the Kansas court issued a preliminary injunction

12   against Anspach, ordering her to discontinue use of the Excel spreadsheet that Retiree,

13   Inc. alleged was proprietary and to remove all material from her website that was created

14   using the spreadsheet.  *Id.* at 4; Doc. 1-5 at 14.  Anspach was also "enjoined from

15   utilizing the developed Excel model in presentations, speaking engagements, books, and

16   articles."  Doc. 1-5 at 14.

17          On August 12, 2013, Laner wrote a letter to Apress Media, LLC, the publisher of a

18   2013 book by Anspach entitled *Control Your Retirement Destiny*.  Laner's letter

19   informed Apress of the injunction, asserted that Anspach's book contained illustrations of

20   the spreadsheet referenced by the court's order, and demanded that Apress discontinue

21   the book's publication.  Doc. 1-6.  At the same time, Laner sent a similar letter to

22   InterActiveCorp ("IAC"), the entity that had acquired About.com from The New York

23   Times Company, informing it of the injunction and asking it "to assure that it does not

24   serve as a vehicle for the defiance of a federal court's injunction."  Doc. 1-7.  The letter

25   sought assurances from About.com to that end.  *Id*.

26          By affidavit, Laner swears that the only other contact he had with Anspach was

27   during the course of his due diligence representing Meyer.  Doc. 16-1 at 2.  He testified

28   that he asked Anspach "to provide copies of the contract she had with her business

1    partner to ensure that the business partner did not have any continuing rights to revenue

2    that would interfere with [Meyer's] rights in any new business venture.  [Laner] also

3    asked her to make sure she had provided any schedules of assets which would be critical

4    to protecting [Meyer's] rights."  *Id*. at 2-3.  It is Laner's position that Anspach was never

5    his client.  *Id*. at 2.

6         On September 11, 2013, Anspach filed her complaint in this court, alleging claims

7    against Meyer, Retiree, Inc., Joel Laner, and Hazelton & Laner, LLP for (1) violations of

8    the Lanham Act; (2) defamation; (3) tortious interference with prospective economic

9    advantage; and (4) breach of fiduciary duty by Laner.  Doc. 1.

10   **II.    Motion to Dismiss for Lack of Personal Jurisdiction.**

11        Defendants Laner and Hazelton & Laner, LLP move to dismiss the claims against

12   them for lack of personal jurisdiction.  Plaintiffs bear the burden of establishing personal

13   jurisdiction.  *See Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995).

14   Because the Court is resolving Defendants' motions without an evidentiary hearing,

15   Plaintiffs "need make only a prima facie showing of jurisdictional facts to withstand the

16   motion to dismiss."  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  That is,

17   Plaintiffs "need only demonstrate facts that if true would support jurisdiction[.]"  *Id*.[2]

18   Although Plaintiffs cannot simply rest on the bare allegations of their complaint,

19   uncontroverted allegations in the complaint must be taken as true.  *Schwarzenegger v.*

20   *Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *AT & T v. Compagnie*

21   *Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)); *Amba Mktg. Sys., Inc. v. Jobar*

22   *Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

23        As there is no applicable federal statute governing personal jurisdiction, Arizona's

24   long-arm statute applies.  *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559 (9th Cir.

25   1995).  Arizona Rule of Civil Procedure 4.2(a) "provides for personal jurisdiction co-

26

27        [2] Neither party has requested an evidentiary hearing and the Court finds that there
     is sufficient evidence in the pleadings to render a decision.  *See Data Disc, Inc. v. Sys.*
28   *Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977*)* ("Because there is no statutory
     method for resolving [a 12(b)(2) motion to dismiss], the mode of its determination is left
     to the trial court.")

1   extensive with the limits of federal due process."[3]  *Doe v. Am. Nat'l Red Cross*, 112 F.3d

2   1048, 1050 (9th Cir. 1997).  Federal due process requires that a defendant have certain

3   "minimum contacts" with the forum state such that the exercise of personal jurisdiction

4   does not offend "traditional notions of fair play and substantial justice."  *See Int'l Shoe*

5   *Co. v. Washington*, 326 U.S. 310, 316 (1945).

6          Neither party contends that Defendants are subject to general jurisdiction.  The

7   Ninth Circuit has established a three-part inquiry for specific jurisdiction: (1) has the

8   defendant purposefully directed his activities at the forum or a resident thereof or

9   performed some act by which he purposefully availed himself of the privileges of

10  conducting activities in the forum, (2) do the claims arise out of or relate to the

11  defendant's forum-related activities, and (3) is the exercise of jurisdiction reasonable?

12  *See Schwarzenegger*, 374 F.3d at 802 (citation omitted).

13          **A.    Purposeful Availment.**

14          In cases sounding in tort, such as this one, courts analyze the "purposeful

15  availment" or "purposeful direction" prong by assessing "whether a defendant

16  purposefully direct[ed] his activities at the forum state," and apply an "effects test that

17  focuses on the forum in which the defendant's actions were felt, whether or not the

18  actions themselves occurred in the forum."  *Yahoo! Inc. v. La Ligue Contre Le Racisme et*

19  *L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (citing *Schwarzenegger*, 374 F.3d

20  at 803).   A defendant purposefully directs conduct at a forum where he has "(1)

21  committed an intentional act, which was (2) expressly aimed at the forum state, and (3)

22  caused harm . . . which is suffered and which the defendant knows is likely to be suffered

23

24          [3] In their reply brief, Defendants argue that Ninth Circuit case law on personal
    jurisdiction does not control and that the Court should look to an as-yet-undecided case
25  before the Arizona Supreme Court.  This argument is not persuasive.  Where the state's
    long-arm jurisdictional statute is coextensive with federal due process requirements, as it
26  is here, the jurisdictional analysis under state law and federal due process are the same.
    *Schwarzenegger*, 374 F.3d at 800-01.  Defendants also argue that the Court should not
27  apply Ninth Circuit case law because the U.S. Supreme Court has recently granted
    certiorari in a Ninth Circuit case involving the personal jurisdiction analysis, which
28  Defendants argue "is inconsistent with the majority of circuits around the country."
    Doc. 34 at 4.  The Court cannot disregard controlling precedent in this Circuit unless and
    until that analysis is overturned.

1    in the forum state." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th

2    Cir. 2011) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128

3    (9th Cir. 2010)); *see also Yahoo! Inc.*, 433 F.3d at 1207 (clarifying that the "brunt of the

4    harm need not be suffered in the forum state").  The Ninth Circuit has explained that

5    "express aiming" occurs when the "defendant is alleged to have engaged in wrongful

6    conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum

7    state." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir.

8    2000).

9         Plaintiffs allege that Defendants Laner and Hazelton & Laner, LLP sent letters to

10   the CFP Board, the New York Times Company, Apress Media LLC, and IAC that were

11   expressly aimed at Arizona because they targeted parties known to be residents of

12   Arizona and caused harm to Plaintiffs suffered in Arizona.  Plaintiffs also claim that the

13   lawsuit filed in Kansas was an intentional act directed at Arizona residents.  Defendants

14   assert that they did not purposefully avail themselves of the benefits of Arizona law or

15   direct wrongful conduct at the forum, and claim that this situation is analogous to that in

16   *Xcentric Ventures, LLC v. Bird*, 683 F. Supp.2d 1068, 1072 (D. Ariz. 2010).  In *Xcentric*,

17   the Court found no personal jurisdiction over Defendants who had published an allegedly

18   defamatory article, where it was unclear whether Defendants knew that Plaintiffs were

19   Arizona residents, the Article did not mention Arizona or Arizona residents, and the

20   article was simply posted on the Internet.  *Id*. at 1073.

21        Unlike a blind Internet posting that made no reference to an Arizona resident, the

22   letters sent by Laner specifically referenced an individual Defendants knew to be an

23   Arizona resident.  Those letters were allegedly targeted at the business contacts of that

24   individual and her company, with the intent of curtailing or even terminating her

25   professional relationships with those contacts.  These allegations are sufficient to meet

26   the first prong of the specific jurisdiction test in this circuit.  *See Yahoo! Inc.*, 433 F.3d at

27   1207; *Schwarzenegger*, 374 F.3d at 803.

28

- 6 -

**B.     Forum-Related Activities.**

"The second requirement for specific jurisdiction is that the contacts constituting purposeful availment must be the ones that give rise to the current suit." *Bancroft & Masters, Inc.*, 223 F.3d at 1088.   The Ninth Circuit "measures[s] this requirement in terms of 'but for' causation." *Id.*   This requirement is met.   The contacts that constitute purposeful availment are the letters written by Laner, the same letters that give rise to Plaintiffs' claims.   But for Laner's drafting of these letters, the claims in this case would not have arisen.

**C.     Reasonableness.**

Where the first two requirements are met, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."   *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985); *see Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) (characterizing this as a "heavy burden of rebutting the strong presumption in favor of jurisdiction").   Seven specific factors must be considered in making the reasonableness determination: "(1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum." *Bancroft & Masters, Inc.*, 223 F.3d at 1088 (citing *Burger King*, 471 U.S. at 476-77).   The Court will address each factor.

First, Defendants' purposeful injection into the forum state is limited.   The letters at issue were aimed at Arizona residents, but they were not sent to Arizona.   Further, Defendants have no other contacts with the State, having only been to Arizona for a limited number of golf vacations and having no other business relationship with Arizona. This factor weighs against the Court's assertion of personal jurisdiction.

Second, the burden on Defendants in litigating in Arizona is substantial, as

Defendants argue.  Doc. 12 at 12.  Defendants operate a two-person law firm in Kansas City, Missouri, and extended absence from that state would impact Defendants' business. But this burden is not substantially greater than the burden on Plaintiffs of litigating in Kansas.  *Cummings v. W. Trial Lawyers Ass'n*, 133 F. Supp. 2d 1144, 1162 (D. Ariz. 2001) (citing *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988) ("[T]he burden on the defendant must be examined in light of the corresponding burden on the plaintiff.")).  Defendants argue that Plaintiffs are already involved in a dispute in a Kansas court and consented to Kansas jurisdiction under the confidentiality agreement. This may be so, but Plaintiffs assert that the Kansas case has already been tried, and that to try another case in Kansas would raise the same costs for Plaintiffs that Defendants would incur litigating in Arizona.  Doc. 26 at 16.  This factor weighs neither for nor against assertion of jurisdiction.

Neither party has argued that the third factor – the extent of the conflict with the sovereignty of the defendant's state – weighs in either direction.

Fourth, Arizona has a strong interest in providing redress for its residents. *Cummings*, 133 F. Supp. 2d at 1162; *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993); *Lake v. Lake*, 817 F.2d 1416, 1423 (9th Cir. 1987); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977).  This factor weighs in favor of the Court exercising jurisdiction.

Fifth, Defendants argue that the most efficient judicial resolution of the controversy is in Kansas.  Kansas City may be the place from which the letters were sent and where the underlying lawsuit was filed, but this alone is not dispositive as electronic access to documents makes the location of such evidence far less important to efficient resolution of the case.  The fact that the Kansas court is currently considering the underlying lawsuit between the parties is a consideration, but it is not dispositive. Although the two lawsuits have some factual overlap, the underlying lawsuit is a claim for breach of the confidentiality agreement between Retiree, Inc. and Anspach while the claims at issue here are for the alleged wrongful conduct of Defendants Laner and his law

1   firm that occurred after and apart from the alleged breach of the contract.  This factor
2   weighs slightly in favor of the assertion of jurisdiction.

3          Neither party has argued that the sixth factor – the importance of the forum to the
4   plaintiff's interest in convenient and effective relief – weighs in either direction.

5          Finally, Defendants assert that an alternative forum does exist, namely Kansas,
6   where the underlying lawsuit was brought and which has personal jurisdiction over both
7   parties.  A Kansas court is well-equipped to deal with the claims asserted here and could
8   exercise jurisdiction over the parties.  This factor weighs against assertion of jurisdiction.

9          Two factors weigh against the exercise of personal jurisdiction and two factors
10  weigh in favor, one slightly.   Given this balance, the Court cannot conclude that
11  Defendants have carried their heavy burden of presenting a compelling case that
12  jurisdiction in this Court is *unreasonable*.  *Burger King*, 471 U.S. at 477.  Under Ninth
13  Circuit case law, Defendants purposefully availed themselves of the forum state, those
14  actions are the but-for cause of this lawsuit, and Defendants have not shown that the
15  exercise of jurisdiction would be unreasonable.  The motion to dismiss is, therefore,
16  denied.

17  **III.    Motion to Dismiss.**

18         Defendants Meyer and Retiree, Inc. move to dismiss Plaintiffs' claims under
19  Rule 12(b)(6) for failure to state a claim, asserting that Plaintiffs' claims are compulsory
20  counterclaims that could only have been raised in the ongoing litigation in Kansas.  Doc.
21  20.   In the alternative, Defendants assert that the claims should be dismissed under
22  Rule 12(b)(3) because the parties are bound by the forum selection clause in the
23  confidentiality agreement that names Kansas as the proper venue.  *Id*.

24         **A.    Compulsory Counterclaims.**

25         In ruling on a motion to dismiss under Rule 12(b)(6), all allegations of material
26  fact are taken as true and construed in the light most favorable to the nonmoving party.
27  *Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 535 (9th Cir. 1995).  A complaint will not
28  be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief.  *Id.* at 535-36.

Federal Rule of Civil Procedure 13(a) requires that a pleading state as a counterclaim "any claim that – at the time of its service – the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."  The rule bars a party who failed to assert a compulsory counterclaim in one action from instituting a second action in which that counterclaim is the basis of the complaint.  *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 854-55 (9th Cir. 1981) (citing *S. Const. Co. v. Pickard*, 371 U.S. 57, 60 (1962)).

In order to be compulsory, a counterclaim must arise out of the same transaction or occurrence as the claims in the underlying case.  Fed. R. Civ. P. 13(a)(1)(A).  The Ninth Circuit applies the "logical relationship" test to determine whether two claims arise out of the same "transaction or occurrence."  *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987) (noting that both Arizona and federal law adopt the logical relationship test for analyzing compulsory counterclaims); *Albright v. Gates,* 362 F.2d 928, 929 (9th Cir.1966) (noting that we have given Rule 13 an "increasingly liberal construction"); 6 C. Wright & A. Miller, Federal Practice & Procedure § 1410, at 40 n.36 (1971).  "This flexible approach to Rule 13 problems attempts to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."  *Pochiro*, 827 F.2d at 1249 (citing *Harris v. Steinem,* 571 F.2d 119, 123 (2d Cir.1978)).

The situation here is strikingly similar to that in *Pochiro*.  In *Pochiro*, a former employee of an insurance company was sued by his former employer in state court in Arizona for appropriating confidential customer information.  Almost one year later, the employee sued the insurance company in a diversity action in federal court, pleading various causes of action based upon allegations that the company had defamed him by calling him "a crook" in regard to his appropriation of the customer information.  *Id*. at

1248.   The Ninth Circuit noted that while the employee's claims for breach of employment contract, unfair competition, and tortious interference claims "at first blush appear a bit removed from Prudential's action to enjoin [employee's] use of confidential records, it is undisputed that [employee's] use of [employer's] customer records is *inextricably intertwined* with the facts as alleged in the [employee's] complaint."  *Id*. at 1250 (emphasis added).  The *Pochiro* court also found that the employees' defamation cause of action was a compulsory counterclaim because "the allegedly defamatory statements are sufficiently related to subject matter of the original action."  *Id*. at 1251. The court supported this holding by noting that the allegedly defamatory statements were related to the employees' use of the confidential records, and that "the collateral estoppel effect of [the employer's] victory in the first action would preclude the [employee] from denying the truth of [those] statements."  *Id*.

        In the present action, Plaintiffs assert a defamation claim based on the letters mailed out by Laner to the New York Times, the CFP Board, Apress Publishing, and IAC, as well as on the Kansas-based lawsuit brought by Retiree, Inc.  It is those same actions that Plaintiffs assert have violated the Lanham Act and tortiously interfered with their business relationships.   Much like the employers' statements in *Pochiro*, the allegedly defamatory letters and the actions taken by Meyer and Laner in relation to the Kansas action sought to inform Plaintiffs' business contacts of the dispute and of Plaintiffs' breach of the confidentiality agreement.  As in *Pochiro*, the Kansas litigation is likely to have a collateral estoppel effect on the claims at issue here; if the district court in Kansas determines that the Plaintiffs did, in fact, breach the confidentiality agreement, Defendants in this lawsuit will have the absolute defense of truth against the defamation claim and will have strong evidence to defend against any claim of tortious interference or violation of the Lanham Act.  As in *Pochiro*, the claims at issue here, while not a perfect match with those in the Kansas litigation, appear "sufficiently related to subject matter of the original action."  *Id*. at 1251.

        Plaintiffs argue that the claims at issue here could not have been compulsory

counterclaims in the Kansas litigation because Meyer was not a party to that action.  This fact is not compelling.   Retiree, Inc. – Meyer's company – was a party there.  Additionally, as long as the Kansas court could have exercised jurisdiction over the new party, a compulsory counterclaim that adds a party to the underlying suit is permissible, and adding parties in counterclaims is even contemplated in subdivision (h) of Rule 13.  Fed. R. Civ. P. 13; *see also AMP Inc. v. Zacharias,* No. 87C3244, 1987 WL 12676, at *3 (N.D. Ill. June 15, 1987) ("Rule 13(a) is not limited in its application to original parties, but is applicable to parties brought in subsequent to the filing of the original action."); 3 Moore's Federal Practice, § 13.02 (1985).  There is also no dispute that the Kansas court could have exercised jurisdiction over Meyer, as he is a resident of Kansas.

Plaintiffs also argue that the claims had not yet matured when Plaintiffs filed their answer in the Kansas litigation in March 2012 because the claims in this litigation are based on letters written in August 2013.  This argument is only partially correct.  "When a party's counterclaim matures after the party files its pleading under Rule 13(a), the counterclaim is not considered compulsory although it may arise from the same transaction or occurrence as the opposing party's claim, and it is not subject to dismissal for failure to plead the claim at the time the initial Rule 13(a) pleading is served."  *Keller Transp., Inc. v. Wagner Enters., LLC*, 873 F. Supp. 2d 1342, 1355 (D. Mont. 2012) (internal quotations and citations omitted); *see also Allan Block Corp. v. Cnty. Materials Corp.,* 512 F.3d 912, 920 (7th Cir. 2008) ("Rule 13(a) does not require the defendant to file as a compulsory counterclaim a claim that hasn't accrued yet") (citing cases).  There is no dispute that the letters to the CFP Board and to the New York Times were written before the lawsuit was filed in Kansas.  Plaintiffs' claims based on those letters, therefore, should have been filed as counterclaims in the underlying lawsuit.  Additionally, to the extent Plaintiffs allege that the filing of the lawsuit in Kansas was defamatory or interfered in their business relationships, this claim was also available at the time that Plaintiffs filed their answer in the Kansas litigation and should have formed the basis of their counterclaims at that time.  These claims will be dismissed.

1    The letters to Apress Publishing and to IAC, as the owner of About.com,

2    informing them of the preliminary injunction and seeking assurances that they would

3    discontinue publication of the book and "not serve as a vehicle for the defiance of a

4    federal court's injunction," were written after Anspach filed her answer.  Doc. 1 ¶ 76.

5    Plaintiffs allege that these letters were false, "defamatory per se," and meant to

6    "wrongfully interfere with [Anspach's] existing and prospective business relationship"

7    among others.  ¶¶ 76-91.  These allegations, as a basis for Plaintiffs' claims of violations

8    of the Lanham Act, defamation, and tortious interference with business relationship, are

9    not subject to dismissal as compulsory counterclaims because they had not yet accrued.

10           **B.     Improper Venue.**

11           Defendants also move to dismiss the claims for improper venue under 28 U.S.C.

12   § 1404(a) and Rule 12(b)(3).  Defendants argue that the forum selection clause contained

13   in the confidentiality agreement between Anspach and Retiree, Inc. provides the proper

14   venue for resolution of this dispute.  Plaintiffs object to application of the forum selection

15   clause, arguing that its language cannot be read so broadly as to apply to the claims at

16   issue here, and that Defendant Meyer and Plaintiff Sensible Money, LLC were not parties

17   to the confidentiality agreement and cannot be bound by the clause.

18           The agreement states that "[t]he parties agree that the Forum for all disputes

19   arising from any breach of this agreement shall be a federal district court in Kansas."[4]

20   Doc. 20 at 12-13.  While the claims in the two suits are factually related, this language

21   controls only "disputes arising from any breach of this agreement."  Plaintiffs do not

22   accuse Defendants of breaching the confidentiality agreement.  Rather, Plaintiffs seek

23   damages for harm allegedly caused by the letters that Laner wrote following the Kansas

24   court's issuance of the preliminary injunction.  Further, the Supreme Court has held that a

25   forum selection clause cannot be enforced by a motion to dismiss under Rule 12(b)(3).

26   _____

27       [4] In resolving motions to dismiss based on a forum selection clause, the pleadings
     are not accepted as true as they are under a Rule 12(b)(6) analysis.  *Argueta v. Banco*
28   *Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).  Rather, analysis under Rule 12(b)(3)
     permits the Court to consider facts outside of the pleadings.  *Id.*

1 *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 575

2 (2013). Rather, the proper vehicle is a motion to transfer under § 1404(a) – an analysis

3 that examines whether venue is "wrong" or "improper" under 28 U.S.C. § 1391. *Atl.*

4 *Marine Const.*, 134 S. Ct. at 577.

5 **IV. Motion to Transfer.**

6  In the alternative, Defendants move to transfer this dispute to Kansas on the

7 grounds that there is a "factual overlap" with the litigation in Kansas, that Plaintiffs'

8 claims arise out of actions in Kansas, and that the Kansas court has expended vast judicial

9 resources in evaluating the underlying dispute.[5] Doc. 20 at 11-12.

10  Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the

11 interest of justice, a district court may transfer any civil action to any other district or

12 division where it might have been brought or to any district or division to which all

13 parties have consented." Transfer under this section is not conditioned on the initial

14 forum's being "wrong," but rather permits transfer to any district where venue is also

15 proper (*i.e.*, "where [the case] might have been brought"). *Atl. Marine Const. Co.*, 134 S.

16 Ct. at 579. As the Supreme Court noted, "Section 1404(a) therefore provides a

17 mechanism for enforcement of forum-selection clauses that point to a particular federal

18 district." *Id*.

19  The venue statute is a codification of the doctrine of *forum non conveniens*. *Id*.

20 Where, as here, there is no valid or applicable forum selection clause, a district court

21 must evaluate both the convenience of the parties and various public-interest factors in

22 considering whether to transfer a case. *Id*. The Court has discretion "to adjudicate

23 motions for transfer according to an 'individualized, case-by-case consideration of

24 convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.

25

26   [5] Defendants title this argument under 28 U.S.C. § 1404(a) as a motion to dismiss. Doc. 10 at 20. As discussed in the previous section, dismissal is available for improper

27 venue only under the factors considered in § 1391, but not for reasons of inconvenience under § 1404(a). *Atl. Marine Const. Co.*, 134 S. Ct. at 579 ("Although a forum-selection

28 clause does not render venue in a court "wrong" or "improper" within the meaning of § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a)."). The Court will interpret this argument as one for transfer.

2000).   In *Jones*, the Ninth Circuit provided the following list of non-exclusive factors to consider:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

*Id*. at 498-99.   The moving party has the burden of demonstrating that transfer is appropriate, *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981), and "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum," *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

Some factors weigh strongly in favor of denying the motion to transfer.  Plaintiffs have chosen to file in Arizona, and there is a strong presumption in favor of the plaintiff's choice of forum.  *Reyno*, 454 U.S. at 265.  Arizona also has a strong interest in ensuring that its citizens are compensated for their injuries.  *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1193 (9th Cir. 2002).

The convenience of parties does not favor transfer.  Although Plaintiffs consented to venue in Kansas for purposes of the litigation regarding breach of the confidentiality agreement, they did not do so for the tort claims at issue here.  Requiring Plaintiffs to litigate these new claims in Kansas in a separate action will "merely shift[] the inconvenience from one party to another," which is not appropriate.  *Warfield v. Gardner*, 346 F.Supp.2d 1033, 1044 (D. Ariz. 2004).   Nor does the convenience of witnesses weigh for or against transfer.  Non-party witnesses would presumably include the recipients of the defamatory letters who are not located in either state.  For the same reason, access to proof is not better in either state.

On balance, Defendants have failed to make a strong showing that this case should be transferred.  *Decker Coal*, 805 F.2d at 843.

**V.      Motion to Stay.**

Finally, Defendants move the Court to stay proceedings pending resolution of the Kansas litigation because the claims asserted by Plaintiffs are compulsory counterclaims in that suit.   Doc. 20 at 14.   Because the Court will dismiss those claims that are compulsory counterclaims to the breach of contract action in Kansas, and the remaining claims based on allegations that post-date that lawsuit are not compulsory counterclaims, there is no basis for granting the motion to stay.

**IT IS ORDERED**:

1.      The motion to dismiss for lack of personal jurisdiction (Doc. 16) is **denied**.

2.      The motion to dismiss for failure to state a claim (Doc. 20) is **granted** as to those claims based on allegations that pre-date March 2012, the date on which Plaintiffs' answer was filed in the Kansas litigation, and **denied** as to claims based on the August 2013 letters sent to Apress Publishing and IAC.

3.      The motion to dismiss for improper venue (Doc. 20) is **denied**.

4.      The motion to transfer (Doc. 20) is **denied**.

5.      The motion to stay (Doc. 20) is **denied**.

Dated this 30th day of January, 2014.

David G. Campbell
United States District Judge